SCHOOL DISTRICT NO. 5 OF OKLAHOMA COUNTY V. S. N. HOPKINS, *Superintendent of Public Instruction and Ex-Officio Auditor of the Territory of Oklahoma.*

(Filed July 30, 1898.)

1. TERRITORIAL SCHOOL FUND—*Legislative Power Over—Insurance.* The legislature of this Territory has complete authority over the territorial school fund, provided it be used for purposes advancing the interests of the schools and school system; and this authority includes the power to appropriate such portion of the territorial school fund as the legislature may direct to the establishment of an insurance fund such as is provided in ch. 17, Session Laws of 1897.

2. SESSION LAWS—*Construction of—Insurance of School Property—Probate Judge—Jurisdiction.* Sections 1 and 2 of chapter 17 of the Session Laws of 1897 are intended solely for the purpose of making an appraisement which shall furnish a basis to the assessment, and constitute a general school-insurance fund; and the fact that such a method has been provided for, and such appraisement and assessment made, does not reflect upon, or throw any doubt upon, the provisions of section 3, which are exclusively intended to provide a method by which losses by fire or storm shall be proven and adjusted in cases of fire. The jurisdiction of the probate judge to hear and determine the same, and the manner prescribed, are not affected or limited in any way by the amount of appraisement ascertained under the provisions of sections 1 and 2.

(Syllabus by the Court.)

*Original Proceeding in Mandamus.*

Application by school district No. 5, Oklahoma county, Oklahoma Territory, for *mandamus* directed to S. N. Hopkins, auditor and superintendent of public instruction for the Territory of Oklahoma. Writ granted.

*J. S. Jenkins* and *J. L. Brown,* for petitioner.

*H. S. Cunningham, Attorney General,* for respondent.

STATEMENT OF FACTS.

The motion for a writ was based upon the allegations

that at the time specified the complainant was a corporation; that the respondent was the territorial superintendent of public instruction; that in August, 1897, the school district was the owner of a public school house and furniture; that on the — day of August, 1897, the county superintendent of Oklahoma county caused the school house and furniture and fixtures to be appraised under the provisions of section 1, ch. 17 Session Laws of 1897, and that the same were appraised at the sum of $231; that on the 25th day of October, 1897, the said school house and furniture were destroyed by fire, together with $51 worth of material then being applied to the repair of said school house; that on the — day of November, 1897, the school board of the district appeared before the probate judge of Oklahoma county, and made proof of the loss of the school house and furniture, and that after a hearing, and upon a rehearing which was had upon the application of the respondent, and upon the taking of testimony and a full hearing, the probate judge fixed the value of the school house, furniture, and material so destroyed at the sum of $384; that the probate judge immediately certified his findings to the county superintendent, who delivered the same, as required by section 3 of the act before mentioned, to the respondent, the territorial superintendent; and that on February 14 the respondent, acting in his official capacity, and as his official act, drew his warrant on the fund in the manner provided by section 3 of said act, proper and legal in form in all respects, except that he drew the warrant for the sum of $173.25, or three-fourths of the amount, $231, at which the school house, furniture, and fixtures had been appraised under section 1 of said act, whereas

the application for the writ charged that it was his duty, as such officer, to have drawn the warrant for the sum of $288, that sum being three-fourths of the amount of the loss as found by the probate judge; and that respondent failed and refused to draw said warrant for any greater or other sum than $173.25. The motion for the writ prays that a peremptory writ of *mandamus* go against him, and that he be ordered to draw his warrant in proper amount in manner and form as required by section 3 of the act referred to. The respondent moved to quash the writ for the reason that it did not state facts sufficient to warrant the issuance of a peremptory writ of *mandamus*, and the cause is submitted to the judgment of the court without briefs.

Opinion of the court by

McATEE, J.: It was suggested on behalf of the respondent that the act was not valid, inasmuch as it undertook to divert a portion of the school fund to purposes which were of the nature of private business, and that the act under which the appropriation was made was unconstitutional; and that if the act should by the court be held to be valid, and within the purposes of the legislation of this Territory with regard to school funds, yet the respondent fully discharged his official duty, and that the proper sum to be paid under the provisions of the act in case of loss was two-thirds of the amount at which the property in each case of loss had been appraised under section 1, and three-fourths of the loss, as ascertained by the probate judge, under the provisions of section 3, chapter 17, Session Laws, 1897.

There are no precedents to govern us in the interpretation of the act, which seems to be original in this Terri-

tory. The first section of the act provides that "the county superintendent shall insure school houses," and that "it shall be his duty, during the months of June, July and August, in the year 1897, to cause each school house, and the furniture and fixtures therein, located in his county, to .be appraised at the actual cash value thereof." The provision is made in this section for appraisers and ap·praisement, and that "the county superintendent shall make a record thereof, and keep a copy of such record in his office," and that it shall be the duty of "the territorial superintendent to prepare a tabulated record of the value of each school house, furniture and fixtures in the Territory, and the district in which it is located, and show the aggregate value of them all. It shall be the duty of the county superintendent to make such appraised values to the territorial superintendent within a reasonable time, to be fixed by the territorial superintendent." By section 2, provisions are made for an assessment of 5 per cent. of the appraised value of each school house, and provision is made by which the county treasurer shall retain out of the territorial school fund 5 per cent. in the year 1897, and 5 per cent. in the year 1898, and to return the same to the territorial treasurer from the territorial school fund, and that the "same shall be kept in the territorial treasury as a territorial school house insurance fund, out of which shall be paid all damages for loss of school houses, furniture and fixtures caused by storms or ·fire." Section 3 provides how losses shall be adjusted and approved, and reads as follows:

"Sec. 3. When any school house, furniture or fixtures therein, are injured or destroyed by storm or fire, it shall be the duty of the school board of that district to make full and careful proof of the amount and value of such in-

jury or loss. The proof shall be made under oath before the probate judge of that county, and he shall hear and determine the matter as a cause on trial before him, and shall take testimony in relation thereto, and make a finding and fix the value and amount of the loss, and he shall certify the same to the county superintendent, and the county superintendent shall forward it to the territorial superintendent, and he shall draw his warrant on the territorial treasurer, and against the fund held to pay such losses, and in favor of the school district sustaining the loss, for three-fourths of the loss so certified to him, and shall forward the same to the county superintendent, and he shall deliver the warrant to the treasurer of that school district." * *

We have been referred to no constitutional provision, nor are we aware of any, which restricts the authority of the territorial legislature from making any reasonable directions with regard to the territorial school fund which shall appropriate it to any purpose consistent with the general benefit of the public schools; and this was the view taken by congress, which, while providing by the Organic Act of the Territory for the appropriation of sections 16 and 36 of each township in the Territory "for the purpose of being applied to the public schools in the state or states hereafter to be erected out of the same'" (section 18,) and which by the act of March 3, 1891, provided that "all the school lands reserved in the Territory of Oklahoma, by this and former acts of congress, may be leased for a period not exceeding three years, for the benefit of the school funds of the said Territory, by the governor thereof, under regulations prescribed by the secretary of the interior." Direct authority having therefore been given to the secretary of the interior in the matter, rules and regulations were officially adopted,

which provide, by rule 8, that "the money, after deduction of the necessary expenses of the leasing, must be treated as a part of the territorial school fund and be placed to the credit of said fund in the custody of the territorial treasurer, and be appropriated as the legislature of the Territory may enact." These rules are found in the rules of the board for leasing school lands, published by that board on March 1, 1897, under the authority of the governor, secretary of the Territory, superintendent of publi· instruction, and the secretary of the board. And this has been the understanding upon which our own legislature has enacted in the past, since it was provided in the act for the support and regulation of common schools, in ch. 73, Statute 1893, sec. 6, that "the amount of money raised by tax or otherwise, for the purpose of purchasing school site, for building, furniture," etc., * * "for insuring school houses or for any other purpose allowed by law, in the district or parts of districts." These acts of congress and of our own legislature must be accepted by us as giving to the legislature of the Territory complete authority over the territorial school fund, providing it be used for purposes advancing the interests of the schools and school system, and to appropriate a portion of this fund to the establishment of an insurance fund, as provided in the act now under consideration.

With regard to the remaining question, we think that a perusal of chapter 17 of the Session Laws of 1897 makes it plainly to appear that sections 1 and 2 of that chapter are intended solely for the purpose of making an appraisement which shall furnish the basis for an assessment to constitute a general school fund, and that the fact that such a method has been provided for, and such appraise-

ment made, does not reflect upon, or throw any doubt upon, the provisions of section 3, which are exclusively intended to provide a method by which the losses by fire or storms shall be proven and adjusted in cases of fire, and that, in the language of the statute, the probate judge "shall hear and determine the matter, as a cause on trial before him, and take testimony and make a finding and fix the value and amount of the loss, and certify the same to the county superintendent," and that he "shall draw his warrant on the territorial treasurer, and against the fund held to pay such losses, and in favor of the school district sustaining the loss." The motion to quash the writ is therefore overruled, and the peremptory writ of *mandamus* will issue.

Hainer, J., dissenting; all the other Justices concurring.